ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

FILED
JUN - 6 2006
U.S. COURT OF FEDERAL CLAIMS

Aeon Nexus Corporation

Plaintiff,

v.

THE UNITED STATES

Defendant.

CFC No. 06-444 C

## MOTION FOR LIMITED PRELIMINARY INJUNCTIVE RELIEF

**COMES NOW** Plaintiff Aeon Nexus Corporation, ("Aeon Nexus"), by and through the undersigned counsel, and hereby files this Motion for Limited Preliminary Injunctive Relief. As more fully described in the accompanying Memorandum in Support of Plaintiff's Motion for Limited Preliminary Injunctive Relief, the Court should enjoin the United States Department of Homeland Security ("DHS") from deploying Compusearch Software Systems, Inc.'s ("CSSI's") e-Acquisition Management Portal solution until such time as issues raised in this protest are resolved. Aeon Nexus is not seeking to enjoin DHS from completing the preliminary work encompassed by Task 1 but instead is seeking a limited injunction which would prevent DHS from going forward with deployment of the system and related tasks (Tasks 2-6) until such time as this Court has the opportunity to rule on the propriety of the Agency's action in awarding the Task Order to CSSI pursuant to Request for Quotations ("RFQ") No. HSHQDC-06-Q-00079.

**WHEREFORE** Plaintiff respectfully requests that the Court issue an order immediately enjoining the Government from commencing or continuing with Tasks 2-6 awarded to CSSI

under RFQ No. HSHQDC-06-Q-00079.

Respectfully submitted,

Date: June 6 2006

By: [signature]

David S. Cohen, Esq.

Cohen Mohr, LLP
1055 Thomas Jefferson St., NW
Suite 504
Washington, DC 20007
(202) 342-2550 (telephone)
(202) 342-6147 (facsimile)

Attorney of Record for Plaintiff Aeon Nexus Corporation.

Of Counsel:

John J. O'Brien
Cohen Mohr, LLP
1055 Thomas Jefferson St., NW
Suite 504
Washington, DC 20007
(202) 342-2550 (telephone)
(202) 342-6147 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 6 day of June 2006, a copy of the foregoing was served by hand delivery on:

Counsel for the United States:

Mark Melnick
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20530

David S. Cohen

FILED
JUN - 6 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

AEON NEXUS CORPORATION

Plaintiff,

v.

THE UNITED STATES

Defendant.

CFC No. 06-444 C

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LIMITED PRELIMINARY INJUNCTIVE RELIEF**

David S. Cohen, Esq.
Cohen Mohr, LLP
1055 Thomas Jefferson St., NW
Suite 504
Washington, DC 20007
(202) 342-2550 (telephone)
(202) 342-6147 (facsimile)

Attorney of Record for Plaintiff
Aeon Nexus Corporation.

Of Counsel:

John J. O'Brien
Cohen Mohr, LLP
1055 Thomas Jefferson St., NW
Suite 504
Washington, DC 20007
(202) 342-2550 (telephone)
(202) 342-6147 (facsimile)

Dated: June 6, 2006

# TABLE OF CONTENTS

**PAGE**


TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ........................................................................ iii

I. Questions Presented ........................................................................ 2

II. Statement of the Case ........................................................................ 3

III. Argument ........................................................................ 6

A. Standard Of Relief ........................................................................ 6

B. It Is Likely That Aeon Nexus Will Succeed On The Merits In This Litigation ........................................................................ 8

1. Improper waiver of requirements for awardee only (Count I) ........................................................................ 8

a. The applicable legal standard ........................................................................ 8

i. Waiver of requirements ........................................................................ 8

ii. Failure to meet minimum mandatory requirement of the RFQ ........................................................................ 10

2. Improper purchase of non-GSA schedule items (Count II) ........................................................................ 11

a. The applicable legal standard ........................................................................ 11

i. Purchase of services not on CSSI's GSA Schedule Contract ........................................................................ 11

3. Failure to adhere to announced evaluation criteria in RFQ and improper evaluation (Count III) ........................................................................ 12

a. The applicable legal standard ........................................................................ 14

i. Improper price evaluation ........................................................................ 14

ii. Improper technical evaluation ........................................................................ 16

## TABLE OF CONTENTS (CON'T)

**PAGE**

C. Aeon Nexus Will Be Irreparably Harmed If The Limited Injunctive Relief Is Not Provided .......... 17

D. The Balance Of Hardships Is In Aeon Nexus's Favor .......... 19

E. The Public Interest Favors The Injunction .......... 21

IV. Conclusion .......... 22

# TABLE OF AUTHORITIES

**CASES** **PAGE**

Adelaide Blomfield Management Company, B-253128, B-253128.2,
Sept. 27, 1993, 93-2 CPD ¶ 1971 ........ 16

Alfa Laval Separation, Inc. v. United States,
175 F.3d 1365, 1367- 68 (Fed. Cir. 1999) ........ 8, 10

Aerolease Long Beach & Satsuma Investment, Inc. v. United States,
31 Fed. Cl. 342 (1994) ........ 18

Ashland Sales and Service Company, B-291206, Dec. 5, 2002, 2003 CPD ¶ 36 ........ 16

Asia Pacific Airlines, v. United States 68 Fed. Cl. 8, 27 (2005) ........ 21

ASOMA Instruments, Inc., B-251674, Apr. 13, 1993, 93-1 CPD ¶ 317 ........ 10

ATA Defense Industries, Inc. v. United States, 38 Fed Cl. 489, 503-04 (1997) ........ 11

Beta Analytics Int'l, Inc. v. United States, 44 Fed.Cl. 131 (1999) ........ 10

Blue Rock Structures, B-293134, Feb. 6, 2004, 2004 CPD ¶ 63 at 6 ........ 15

Chrysler Motors Corp., 908 F.2d at 952, 15 USPQ2d at 1470 ........ 7

Cincom Systems, Inc. v. United States, 37 Fed. Cl. 266 (1997) ........ 7

CourtSmart Digital Sys., Inc., B.292995.2, B-292995.3,
Feb. 13, 2004, 2004 CPD ¶ 79 ........ 10, 12

CW Gov 't Travel, Inc. v. United States, 61 Fed. Cl. 559, 575 (2004) ........ 18, 20

Department of Energy-Request for Reconsideration,
B-246977, et al., 92-2 CPD ¶ 20 ........ 9

Doty v. United States, 55 F.3d 1244, 1251 (Fed. Cir. 1995) ........ 21

E.C. Campbell, Inc., B-205533, July 8, 1982, 82-2 CPD ¶ 34 ........ 9

Entex Corp. v. United States, 58 Fed. Cl. 634, 648 (2003) ........ 7

Essex Electro Engineers, Inc., B-229491, Feb. 29, 1988, 88-1 CPD ¶ 215 ........ 11

## TABLE OF AUTHORITIES (CON'T)

**CASES** **PAGE**

Farmland Nat'l Beef, B-286607, B-286607.2, Jan. 24, 2001, 2001 CPD, ¶ 31 at 8 ................ 10

Fluke Trendar Corp., B-196071, Mar. 13, 1980, 80-1 CPD ¶ 196 ........................................ 11

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324, 1332 (Fed. Cir. 2001) ........................................................................ 7

Information Ventures, Inc., B-232094, Nov. 4, 1988, 88-2 CPD ¶ 443 at 4 .............................. 9

InterComp Co., B-213059, May 22, 1984, 84-1 CPD ¶ 540 .................................................... 9

J.A. Jones Management Services, Inc., B-276864, July 24, 1997, 97-2 CPD ¶ 47 .................. 17

KEI Pearson, Inc., B-294226.3, B-294226.4, Jan. 10, 2005, 2005 CPD ¶ 12 .......................... 12

Labat-Anderson, Inc, B-246071 et al., Feb. 18, 1992, 92-1 CPD ¶ 193 ................................. 14

Labat-Anderson Inc., v. United States, 50 Fed.Cl. 99, 104 (2001) .......................................... 7

Language Services Associates, Inc., B-297392, Jan. 17, 2006, 2006 CPD ¶ 20 at 5 ................. 7

Logicon, Inc. v. United States, 22 Cl. Ct. 776 (1991) .......................................................... 21

Low & Associates, Inc., B-297444.2, Apr. 13, 2006, 2006 CPD ¶ _____ ............................. 10

Mangi Environmental Group, Inc. v. U.S., 47 Fed.Cl. 10 (2000) ............................................. 9

MCI WorldCom Communications, Inc., B-286201.4, B-286201.5,
Apr. 19, 2001, 2001 CPD ¶ 157 ..................................................................................... 16

MCR Fed., Inc, B-280969, Dec. 14, 1998, 99-1 CPD ¶ 8 ...................................................... 15

MIL Corporation, B-294836, Dec. 30, 2004, 2005 CPD ¶ 29 at 8 .......................................... 15

Mnemonics Inc., B-290961, Oct. 28, 2002, 2003 CPD ¶ 39 at _____ ...................................... 14

National Maritime Union of America v. Commander, MSC,
824 F.2d 1228 (D.C. Cir. 1987) ...................................................................................... 18

Norman R. Selinger & Associates, Inc.,
57 Comp.Gen. 809 (1978), 78-2 CPD ¶ 213 ...................................................................... 9

## TABLE OF AUTHORITIES (CON'T)

**CASES** **PAGE**

Northrop Grumman Information Technology, Inc. et al., B-295526 et seq., Mar. 16, 2005, 2005 CPD ¶ 45 at 15 .......... 15

O'Donnell Construction Co. v. District of Columbia, 963 F.2d 420 (D.C. Cir. 1992) .......... 18

Overstreet Elec. Co. v. United States, 47 Fed. Cl. 728, 743-44 (2000) .......... 18, 20

Park Tower Management, Ltd v. United States, 67 Fed. Cl. 548, n. 29 (2005) .......... 9

PGBA, LLC, v. United States 60 Fed. Cl. 196, 221 (2004) .......... 21

Preferred Systems Solutions, B-292322, Aug., 25, 2003, 2003 CPD ¶ 166 at 7 .......... 15

Pyxis Corp. , B-282469, B-282469.2, July 15, 1999, 99-2 CPD 18 at 4 .......... 12

RCA Corp.; Norman R. Selinger & Associates, Inc., 57 Comp.Gen. 809 (1978), 78-2 CPD ¶ 213 .......... 9

Red River Servo Corp. V. United States, 60 Fed. Cl. 532, 549 (2004) .......... 18

Rockwell Electronic Commerce Corporation, B-286201, Dec. 14, 2000, 2001 CPD ¶ 65 .......... 16

Sales Res. Consultants, Inc. , B-284943, B-284943.2, June 9, 2000, 2000 CPD 102 at 3-4 .......... 12

SDS International, Inc. v. United States, 55 Fed. Cl. 363 (2003) .......... 7

Shumaker Trucking and Excavating Contractors, B-290732, Sep, 25, 2002, 2002 CPD ¶ 169 at 9 .......... 15

SOS Interpreting, Ltd., B-293026, et al., Jan. 20, 2004, 2005 CPD ¶ 26 .......... 16

Sperry Marine, Inc.; Aydin Radar & E.W. Division, B-227106, et al., Sept. 14, 1987, 87-2 CPD ¶ 241 at 7 .......... 9

Symplicity Corp. , B-291902, Apr. 29, 2003, 2003CPD 89 at 4 .......... 12, 16

Techseco, Inc., B-284949, June 19, 2000, 2000 CPD ¶ 105 .......... 10

## TABLE OF AUTHORITIES (CON'T)

**CASES** **PAGE**

Telemetrics, Inc.; Techniarts Engineering, B- 242957, B-242957.7, Apr. 3, 1992, 92-2 CPD ¶ 168 .......... 10

Texas Instruments Inc. v. Tessera, Inc., 231 F.3d 1325, 1329, (Fed Cir. 2000) .......... 7

Thompson v. Cherokee Nation of Okla., 334 F.3d. 1075, 1084 (Fed. Cir. 2003).......... 9

Transatlantic Lines LLC v. United States, 68 Fed. Cl. 48, 51 (2005) .......... 8, 18, 20

TRW, Inc., B-234558, June 21, 1989, 89-1 CPD ¶ 584 at 4 .......... 15

Universal Yacht Servs., Inc., B-287071, B-287071.2, Apr. 4, 2001, 2001 CPD ¶ 74 .......... 10

Varicon International, *et al.* v. Office of Personnel Management, 934 F. Supp. 440 (D.D.C. 1996).......... 18

Versar, Inc., B-254464.3, Feb. 16, 1994, 94-1 CPD ¶ 230 .......... 16

**STATUTES AND RULES**

5 U.S.C. § 706 .......... 7

5 U.S.C. § 706(2)(A) .......... 7

10 U.S.C. § 2305(b)(1) (1994) .......... 8

28 U.S.C. § 1491 (b)(4) .......... 7

40 Fed.Cl. at 230.......... 8

41 U.S.C §§ 253a(b)(1)(A), 253b(a); FAR 8.405-2(d) .......... 14

41 U.S.C. 259(b)(3); FAR 6.102(d)(3).......... 12

48 C.F.R. § 15.606(a), (c) (1996) .......... 8

FAR Subpart 8.4 .......... 2, 4, 11, 12

## TABLE OF AUTHORITIES (CON'T)

**CASES** **PAGE**

FAR 8.401(a) ........ 12

FAR 8.405-2(a) ........ 11

FAR 8.405-2(d) ........ 14

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

AEON NEXUS CORPORATION

Plaintiff,

v.

THE UNITED STATES

Defendant.

CFC No. __________

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LIMITED PRELIMINARY INJUNCTIVE RELIEF**

**COMES NOW** Plaintiff Aeon Nexus Corporation, ("Aeon Nexus"), by and through the undersigned counsel, and hereby files this Memorandum in Support of Plaintiff's Motion for Limited Preliminary Injunctive relief. In this case, Aeon Nexus protests the failure of the United States Department of Homeland Security ("DHS"), Office of Procurement Operations, through its Contracting Officer, Bernard Salter, located at the agency's office in Washington D.C., to obey applicable law and regulation including the requirements of the Federal Acquisition Regulation ("FAR"). The Contracting Officer and DHS's Office of Procurement Operations violated applicable law and regulation by improperly awarding a Task Order ("TO") to Compusearch Software Systems, Inc., ("CSSI") for an e-Acquisition Management Portal solution needed to optimize procurement and administrative functions of the Office of Procurement Operations. The award was made pursuant to a Request for Quotations ("RFQ") issued under the General Services Administration ("DHS") Federal Supply Schedule ("FSS") program.

This Motion for Limited Preliminary Injunctive Relief seeks to enjoin DHS from deploying CSSI's e-Acquisition Management Portal solution until such time as issues raised in this protest are resolved. Aeon Nexus is not seeking to enjoin DHS from completing the preliminary work encompassed by Task 1, which includes the following:

- Kickoff meeting (3 days after award);
- Requirements Analysis;
- System Requirements Specification (30 days);
- WBS/Milestone schedule (30 days);
- Implementation Plan (30 days);
- Project status meetings

RFQ at C.5[1]

Aeon Nexus is seeking a limited injunction that would prevent DHS from going forward with deployment of the system and related tasks (Tasks 2-6) until such time as this Court has the opportunity to rule on the propriety of the Agency's action in awarding the TO to CSSI.

## I. Questions Presented

1. Did the Agency improperly waive, for CSSI, the RFQ's requirements that the contractor "host" the system at its facility and did CSSI fail to comply with mandatory requirements of the solicitation in this respect and therefore should its proposal have been disqualified?

2. Did the Agency improperly contract for goods or services from CSSI, that were not on CSSI's GSA Schedule contract, using the simplified procedures of FAR Subpart 8.4, Federal Supply Schedules, which may not be used to purchase non-schedule goods and services?

3. Were the Agency's price and technical evaluation and best value analysis irrational,

[1] The supporting Declaration of Omar Usmani with RFQ No. HSHQDC-06-Q-00079 and CSSI GSA Schedule contract attached is being filed herewith.

arbitrary and capricious?

## II. Statement of the Case

Plaintiff Aeon Nexus is a Small Disadvantaged Business ("SDB") whose principal office is located in Manassas, Virginia. Aeon Nexus is engaged in the business of providing information technology ("IT") support services to the United States Government and other organizations. Aeon Nexus was an actual offeror and submitted a proposal under the e-Acquisition Management Portal solicitation.

On April 4, 2006, DHS's Office of Procurement Operations released the e-Acquisition Management Portal RFQ No. HSHQDC-06-Q-00079. Two days later, on April 6, 2006, DHS's Office of Procurement Operations released a "Question and Answer" document and a revised Statement of Work ("SOW") among other documents.

The e-Acquisition Management Portal RFQ solicited proposals for a Firm Fixed Price ("FFP") Task Order for a web based e-Acquisition Management Portal solution to optimize the procurement and administrative functions of the Office of Procurement Operations. The portal consists of software that can be accessed via the internet. It will be used by the Government and vendors to perform a number of functions to facilitate Task Order/Delivery Order ("TO/DO") procurements under EAGLE and FirstSource, which are two, large DHS contracts for computer products and services. The minimum functions that DHS required the portal to perform are:

- Government Creation and Issuance of TO/DO Solicitations
- Contractor Submission of Proposals
- Government Evaluation of Proposals
- Government Execution/Award of TOs/DOs
- Government Market Research of IT Products and Purchase Card Procurement
- Dashboard Capability for Executive and Senior Management

April 6 RFQ SOW at 5.

The DHS Office of Procurement competed this requirement among existing GSA Federal Supply Schedule holders of Schedule 70 General Purpose Commercial Information Technology Equipment, Software, and Services, SIN (Special Item Number) 132-34 Software Maintenance and SIN 132-33 Perpetual Software License. The acquisition was governed by the rules applicable to GSA schedule procurements set forth in FAR 8.4.

The RFQ provided as follows with respect to the basis of award:

> BASIS OF AWARD:
>
> Each Offeror's proposal will be evaluated in accordance with the evaluation criteria identified below:
>
> There are a total of five (5) evaluation factors: 1) Technical Approach and Capabilities; 2) Key Personnel; 3) Organizational Experience and 4) Past Performance and one (1) non technical evaluation factor - Price. Technical approach and capabilities is the most important; key personnel, organizational experience and past performance are of equal importance and when combined are of equal importance to technical approach. Technical approach, key personnel, organizational experience and past performance when combined are more important than Price.
>
> Award will be made to the responsible Offeror whose offer, conforming to this RFQ, provides the best overall value to the Government, evaluation factors, and price considered. The Government will not make award at a significantly higher overall cost to the Government to achieve *only* slightly superior technical capability. The Government will make this assessment through the development of trade-off analysis and other analytic studies that involve the assessment of benefits of superior technical capability features (e.g., benefits clearly attributable to increased productivity, probability of successful contract performance, and/or unique and innovative approaches or capabilities) versus the added cost.

April 4 RFQ at 5 of 6.

Importantly, for purposes of the present protest, the RFQ also required that the contractor "host" the system. The RFQ provided that "[t]he contractor shall provide the services required to host and operate the DHS ESO e-Acquisition Management Portal system, based on commercial best practices for hosting operations. The contractor shall be responsible for the establishment of

the hosting environment, procurement of required hardware, and management of system operations." April 6 SOW at 10. The RFQ further provided:

> The contractor shall provide the following specific deliverables for Task 5: (see Section C.4 for Schedule of Deliverables):
>
> a. Hosting of the e-Acquisition Management Portal
> b. Service Level Agreement
> c. Registered IP address and URL
>
> In the event that DHS elects to transfer hosting responsibility from the contractor to the Government, the contractor shall assist the Government in transitioning the operational environment from the contractor's facility to the designated Government facility.

Id.[2]

The base period of performance under the RFQ is the date of award through April 30, 2007. In addition, the RFQ contained four, one year options. April 4, 2006 RFQ at 1. The RFQ also included an aggressive delivery schedule for the six tasks that the contractor must perform:

| TASK | TASK DESCRIPTION | SCHEDULE |
|---|---|---|
| Task 1 | System Requirements Specification | 30 days after award |
| Task 2 | e-Acquisition Management Portal implementation | Initial deployment by 7/1/06<br>Full deployment by 8/1/06 |
| Task 3 | Training Plan | As required to support 7/1/06 initial deployment |
| Task 4 | Procure computer environment for portal implementation and operation | As required to support 7/1/06 initial deployment |

[2] Similarly, RFQ at section F.1 "Place of Performance" provides as follows:

> The primary place of performance shall be the contractor's facility. The contractor will be required to visit DHS locations within the Washington DC metropolitan area to attend meetings and conduct interviews and training sessions to complete the tasks defined herein.

This is additional evidence that hosting was to be done at a contractor rather than at a Government facility.

| | | |
|---|---|---|
| Task 5 | DHS e-Acquisition Management Portal hosting | Starting with initial system deployment |
| Task 6 | Help desk support | Starting with initial system deployment |

April 6 SOW at 11.

On April 28, 2006, Aeon Nexus was informed by DHS that the technical proposal it submitted in response to the above requirements received an "Excellent" score and its price proposal was within the competitive range. Aeon Nexus was also informed, in the same letter, that Compusearch Software Systems, Inc., was being awarded the TO in a total amount not to exceed $5,167,188.24.

## III. Argument

The present case meets each of the requirements for an injunction applied by the U.S. Court of Appeals for the Federal Circuit. Plaintiff has a high likelihood of success on the merits of its claims, and it will suffer irreparable injury in the absence of the requested limited injunctive relief. Moreover, granting the relief requested will serve the public interest, without significantly harming the United States or any other interested party. Therefore, Aeon Nexus is entitled to injunctive relief enjoining DHS from proceeding with Tasks 2-6 as specified under Solicitation No. HSHQDC-06-Q-00079 until such time as the Court has the opportunity to rule on Plaintiff's protest allegations.

### A. Standard Of Relief

In considering a motion for a preliminary injunction, this Court applies the following criteria:

(1) a reasonable likelihood of success on the merits;

(2) irreparable harm;

(3) a balance of hardships in its favor; and

(4) a public interest in favor of the injunction.

Texas Instruments Inc. v. Tessera, Inc., 231 F.3d 1325, 1329, (Fed Cir. 2000) citing Chrysler Motors Corp., 908 F.2d at 952, 15 USPQ2d at 1470. See also SDS International, Inc. v. United States, 55 Fed. Cl. 363 (2003); Cincom Systems, Inc. v. United States, 37 Fed. Cl. 266 (1997).

Under 28 U.S.C. § 1491 (b)(4), this Court's review of an agency's decision regarding a contract award takes place in accord with standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706. Section 706 calls on a reviewing court to set aside agency action that is, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Based on that standard of review, this Court should overturn a procurement decision where "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001); see also Entex Corp. v. United States, 58 Fed. Cl. 634, 648 (2003).[3]

---

[3] Although this procurement was conducted pursuant to FAR Subpart 8.4, it incorporated aspects of negotiated procurements, for example, requesting and evaluating competitive technical proposals. "While this Court has held that FSS acquisitions are not transformed into negotiated procurements simply because an agency chooses to utilize in its evaluation process more formal elements typically used in a negotiated procurement, where an agency engages in a more comprehensive selection process than contemplated by the FSS scheme, a frustrated bidder may still challenge the agency award under the arbitrary and capricious standard articulated in 5 U.S.C. § 706(2)(A)." Labat-Anderson Inc., v. United States, 50 Fed.Cl. 99, 104 (2001). See also Language Services Associates, Inc., B-297392, Jan. 17, 2006, 2006 CPD ¶ 20 at 5, holding "[i]n the context of an RFQ, when an agency chooses to employ competitive procedures similar to those used in a Federal Acquisition Regulation (FAR) Part 15 negotiated procurement, and when a protest is filed challenging the outcome of the competition, we will review the record to ensure that the agency's evaluation of the vendors' submissions was reasonable and consistent with the terms of the RFQ. While the provisions of FAR Part 15 do not directly apply here, we will analyze [protestor's] contentions by the standards applied to negotiated procurements." (Citations omitted.)

**B. <u>It Is Likely That Aeon Nexus Will Succeed On The Merits In This Litigation.</u>**

**1. <u>Improper waiver of requirements for awardee only (Count I)</u>**

Count I of the Complaint alleges that the RFQ clearly indicated that the contractor was required to "host" the system at its facility. April 6 SOW at 10. Aeon Nexus understands that the award to CSSI is not based on CSSI hosting the system at its facility but instead is based on the system being hosted at a Government facility. As shown immediately below, this is a clear violation of applicable law, is arbitrary and capricious and therefore Aeon Nexus is likely to succeed on the merits.

**a. <u>The applicable legal standard</u>**

**i. <u>Waiver of requirements</u>**

DHS could not simply waive, after the fact, the requirements for one offeror. The Federal Circuit, in <u>Alfa Laval Separation, Inc. v. United States</u>, 175 F.3d 1365, 1367- 68 (Fed. Cir. 1999), held as follows:

> As the trial court held, "regardless of the panel's view of the appropriateness of the standard [set out in the RFP], the Navy is strictly bound by its terms," and in waiving a portion of the standard for Westfalia, the Navy violated a clearly applicable procurement statute and regulation. 40 Fed.Cl. at 230; *see also* 10 U.S.C. § 2305(b)(1) (1994) ("The head of an agency shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation."); 48 C.F.R. § 15.606(a), (c) (1996) (requiring the government to issue a written amendment to a solicitation when it "changes, relaxes, increases, or otherwise modifies its requirements," and to provide an opportunity for competitors to submit new or amended proposals when it prefers a proposal involving "a departure from the stated requirements").

<u>See also</u>, <u>Transatlantic Lines LLC v. United States</u>, 68 Fed. Cl. 48, 51 (2005).

---

"[A]n agency may not properly award a contract where its requirements significantly change since this would prejudice other offerors." Department of Energy-Request for Reconsideration, B-246977, et al., July 14, 1992, 92-2 CPD ¶ 20, at 5 citing InterComp Co., B-213059, May 22, 1984, 84-1 CPD ¶ 540.[4] See also Mangi Environmental Group, Inc. v. U.S., 47 Fed.Cl. 10 (2000); Information Ventures, Inc., B-232094, Nov. 4, 1988, 88-2 CPD ¶ 443 at 4, noting that ("'[W]hen the government changes or relaxes its requirements, either before or after the receipt of proposals, the contracting officer shall issue a written amendment to afford all offerors an opportunity to respond to the revised requirements.'" (citations omitted)). "[W]here a technical proposal represents a basic change in the Government's essential requirements, it can be accepted only if the agency informs the other offerors of the change and affords them an opportunity to submit revised proposals." Sperry Marine, Inc.; Aydin Radar & E.W. Division, B-227106, et al., Sept. 14, 1987, 87-2 CPD ¶ 241 at 7, citing E.C. Campbell, Inc., B-205533, July 8, 1982, 82-2 CPD ¶ 34. "This reflects the fundamental federal procurement principle that all offerors must be treated fairly and equally so as to promote full and open competition." Id. at 7, citing E.C. Campbell, Inc., supra.; RCA Corp.; Norman R. Selinger & Associates, Inc., 57 Comp.Gen. 809 (1978), 78-2 CPD ¶ 213. Similarly, the Government cannot make an award, then immediately modify or waive material requirements included in the solicitation which formed the basis of the competition

> In a competitive procurement, a proposal that fails to conform to one or more of the solicitation's material requirements is

[4] Although the decisions of the U.S. Government Accountability Office ("GAO") are not binding on this Court, the Court has stated that such decisions can be of great value when considering issues of Federal procurement law. See Park Tower Management, Ltd v. United States, 67 Fed. Cl. 548, n. 29 (2005) citing Thompson v. Cherokee Nation of Okla., 334 F.3d. 1075, 1084 (Fed. Cir. 2003).

> technically unacceptable and cannot form the basis for an award. See Farmland Nat'l Beef, B-286607, B-286607.2, Jan. 24, 2001, 2001 CPD, ¶ 31 at 8. Similarly, an agency may not make an award, then immediately modify or waive material requirements included in the solicitation which formed the basis of the competition; rather, awards must be based on the requirements and criteria disclosed in the solicitation. See, e.g., Universal Yacht Servs., Inc., B-287071, B-287071.2, Apr. 4, 2001, 2001 CPD ¶ 74.

Low & Associates, Inc., B-297444.2, Apr. 13, 2006, 2006 CPD ¶ _____.

**ii. Failure to meet minimum mandatory requirement of the RFQ**

CSSI's proposal, which apparently offered to perform the hosting at a Government facility rather than at its own facility failed to meet the minimum mandatory requirements of the solicitation, contained in the April 6 SOW at page 10 § C.4.5, and therefore CSSI was not eligible to receive award.

A proposal that fails to meet material solicitation requirements is technically unacceptable and may not form the basis for a valid award. See Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365 (Fed.Cir.1999); Beta Analytics Int'l, Inc. v. United States, 44 Fed.Cl. 131 (1999). See also Low & Associates, Inc., B-297444.2, April 13, 2006, 2006 CPD ¶ _____ (GAO sustains protest against award of a GSA schedule order where the "agency effectively relaxed the solicitation's stated requirements for on-site performance without providing an opportunity for the other competing firms to submit quotations on a similar basis"). CourtSmart Digital Sys., Inc., B.292995.2, B-292995.3, Feb. 13, 2004, 2004 CPD ¶ 79 (GSA schedule order improper where vendor's quote did not comply with solicitation requirement that equipment be Section 508 compliant); Techseco, Inc., B-284949, June 19, 2000, 2000 CPD ¶ 105 (agency reasonably rejected proposal that failed to meet mandatory requirements); ASOMA Instruments, Inc., B-251674, Apr. 13, 1993, 93-1 CPD ¶ 317 (same); Telemetrics, Inc.; Techniarts Engineering, B-

242957, B-242957.7, Apr. 3, 1992, 92-2 CPD ¶ 168 (award improper where proposed equipment failed to comply with solicitation requirements); Essex Electro Engineers, Inc., B-229491, Feb. 29, 1988, 88-1 CPD ¶ 215 (same); Fluke Trendar Corp., B-196071, Mar. 13, 1980, 80-1 CPD ¶ 196 (bid which deviates from material solicitation requirements must be rejected).

**2. Improper purchase of non-GSA schedule items (Count II)**

Count II of the Complaint alleges that the Government stated it was conducting this procurement in accordance with FAR Subpart 8.4, Federal Supply Schedules (April 4 RFQ at 1). The Government may not use the GSA Schedule program and the simplified procedures of FAR Subpart 8.4, Federal Supply Schedules, to purchase goods and services that are not contained on the offeror's GSA Schedule. CSSI does not offer hosting on its GSA schedule contract and therefore it could not properly be awarded a contract for hosting under the procedures of FAR Subpart 8.4. As shown immediately below, this is a clear violation of applicable law, is arbitrary and capricious and therefore Aeon Nexus is likely to succeed on the merits.

**a. The applicable legal standard**

**i. Purchase of services not on CSSI's GSA Schedule Contract**

FAR 8.405-2(a) provides as follows:

> Ordering activities shall use the procedures in this subsection when ordering services priced at hourly rates as established by the schedule contracts. The applicable services will be identified in the Federal Supply Schedule publications and the contractor's pricelists.

This Court has held that the simplified procedures of FAR Subpart 8.4, Federal Supply Schedules may not be used to purchase non-Schedule items. See ATA Defense Industries, Inc. v. United States, 38 Fed Cl. 489, 503-04 (1997). Similarly, GAO has held as follows:

> The FSS program, directed and managed by GSA, gives federal agencies a simplified process for obtaining commonly used commercial supplies and services. FAR 8.401(a). The procedures established for the FSS program satisfy the requirement for full and open competition. 41 U.S.C. 259(b)(3); FAR 6.102(d)(3); Sales Res. Consultants, Inc. , B-284943, B-284943.2, June 9, 2000, 2000 CPD 102 at 3-4. **NonFSS products and services may not be purchased using FSS procedures; instead, their purchase requires compliance with the applicable procurement laws and regulations**. Symplicity Corp. , B-291902, Apr. 29, 2003, 2003CPD 89 at 4; Pyxis Corp. , B-282469, B-282469.2, July 15, 1999, 99-2 CPD 18 at 4.

KEI Pearson, Inc., B-294226.3, B-294226.4, Jan. 10, 2005, 2005 CPD ¶ 12 at 5-6 (emphasis added); see also CourtSmart Digital Systems, Inc., B-292995.2, B-292995.3 Feb. 13, 2004, 2004 CPD ¶ 79 at 13 ("In sum, York's quotation was unacceptable and could not be selected because it included at least one non-FSS item . . .")

In the present case the FAR Subpart 8.4 RFQ clearly required contractor hosting. CSSI does not have hosting on its GSA schedule and therefore the procedures of FAR Subpart 8.4 could not be used to award a contract to CSSI with a requirement for hosting.

### 3. Failure to adhere to announced evaluation criteria in RFQ and improper evaluation (Count III)

Count III of the Complaint alleges that DHS failed to adhere to the evaluation criteria announced in RFQ and conducted an improper evaluation. The RFQ provided as follows with respect to the evaluation criteria:

> Technical approach and capabilities is the most important; key personnel, organizational experience and past performance are of equal importance and when combined are of equal importance to technical approach. Technical approach, key personnel, organizational experience and past performance when combined are more important than Price.

April 4 RFQ at 5 of 6.

In the present case DHS failed to adhere to the evaluation criteria as stated in the RFQ

and instead increased the importance of price so that it became the most important criterion - - contrary to what was stated in the solicitation. Equally important, the price evaluation was also irrational because it was not based on an "apples to apples" comparison. The Aeon Nexus proposal, in conformance with the solicitation, included the costs of hosting at its facility while the CSSI proposal did not.

In addition, all the functionality required by the SOW does not currently exist in CSSI's "PRISM" product or in the "Optional PRISM Web Modules" contained on CSSI's GSA Schedule contract. The technical evaluation of CSSI did not properly account for the additional technical and performance risk and potential difficulties relating to CSSI having to create functionality from "scratch."

Finally, the RFQ requires that the e-Acquisition Management Portal solution interface with DHS systems. The RFQ states that Customs and Border Patrol ("CBP") currently uses "SAP iPro" as their acquisition system. April 6 SOW at 6. Plaintiff understands that the PRISM system being offered by CSSI does not interface with SAP iPro and that CSSI requires its customers to install PRISM 5.0 as a prerequisite for interfacing with the procurement software that will be developed under the e-Acquisition Management Portal task order. This either imposes additional costs on DHS to migrate to PRISM 5.0 or creates additional technical and performance difficulties that were either not considered or given insufficient weight in the Government's evaluation because CSSI cannot currently interface with SAP iPro. Moreover, the RFQ required offerors to propose fixed prices that were to include "all costs and fees, including overhead and profit." April 4 RFQ at 5 of 6. The RFQ did not permit the contractor to impose costs outside the proposed fixed price on the Government. Therefore, CSSI could not propose a condition that required the Government to acquire and implement software that was not part of

CSSI's proposed portal solution, or the Government software environment that the RFQ described.

As shown immediately below, this is a violation of applicable law, is arbitrary and capricious and therefore Aeon Nexus is likely to succeed on the merits.

a. **The applicable legal standard**

i. **Improper price evaluation**

The Competition in Contracting Act of 1984 ("CICA"), as implemented by the FAR, mandates that a solicitation disclose the evaluation factors for award and further requires that an agency evaluate proposals solely in accordance with those disclosed factors. 41 U.S.C §§ 253a(b)(1)(A), 253b(a); FAR 8.405-2(d)[5]; see also Labat-Anderson, Inc, B-246071 et al., Feb. 18, 1992, 92-1 CPD ¶ 193 (sustaining protest where agency ignored stated evaluation criteria and considered unstated evaluation criteria). "An agency may not induce offerors to prepare and submit proposals based on one premise, then make source selection decisions based on another." Mnemonics Inc., B-290961, Oct. 28, 2002, 2003 CPD ¶ 39 at 5 (sustaining protest where agency considered undisclosed evaluation factor). Accordingly, the GAO has made clear that:

> [o]nce offerors are informed of the evaluation criteria against which proposals will be evaluated, the agency must adhere to the stated criteria, or inform all offerors of all significant changes.

Id. at 5.

---

[5] FAR 8.405-2(d) provides as follows:

> *Evaluation.* The ordering activity shall evaluate all responses received using the evaluation criteria provided to the schedule contractors. . .

Contrary to this well settled law, DHS failed to adhere to the evaluation criteria as stated in the RFQ and instead increased the importance of price so that it became the most important criterion - - contrary to what was stated in the solicitation. "Where there is inadequate supporting rationale in the record for a decision to select a lower-priced proposal with a lower technical ranking notwithstanding a solicitation's emphasis on technical factors, we cannot conclude that the agency had a reasonable basis for its decision." Preferred Systems Solutions, B-292322, Aug., 25, 2003, 2003 CPD ¶ 166 at 7 citing MCR Fed., Inc, B-280969, Dec. 14, 1998, 99-1 CPD ¶ 8; See also Shumaker Trucking and Excavating Contractors, B-290732, Sep, 25, 2002, 2002 CPD ¶ 169 at 9; MIL Corporation, B-294836, Dec. 30, 2004, 2005 CPD ¶ 29 at 8; Blue Rock Structures, B-293134, Feb. 6, 2004, 2004 CPD ¶ 63 at 6 ("A tradeoff analysis that fails to furnish any explanation as to why a higher-rated proposal does not in fact offer technical advantages or why those technical advantages are not worth a price premium does not satisfy the requirement for a documented tradeoff rationale, particularly where, as here, price is secondary to technical considerations under the RFP's evaluation scheme.") Where price is secondary to technical considerations, an agency may not select a lower-priced, lower-scored proposal unless it first determines that the premium involved in selecting a higher-rated, higher-priced proposal is not justified. TRW, Inc., B-234558, June 21, 1989, 89-1 CPD ¶ 584 at 4.

In addition, because Aeon Nexus's price included costs for hosting the system at its facility while CSSI's price did not, the price evaluation was not an "apples to apples" comparison and was irrational. Northrop Grumman Information Technology, Inc. et al., B-295526 et seq., Mar. 16, 2005, 2005 CPD ¶ 45 at 15 ("Where a source selection decision is based on figures that do not reasonably represent the difference in cost to be incurred under competing proposals, the source selection is not reasonably based."); An award based on a flawed evaluation that does not

include all proposed costs required by the solicitation simply cannot stand. See Rockwell Electronic Commerce Corporation, B-286201, Dec. 14, 2000, 2001 CPD ¶ 65, recon. denied, Social Security Administration; MCI WorldCom Communications, Inc., B-286201.4, B-286201.5, Apr. 19, 2001, 2001 CPD ¶ 157; Versar, Inc., B-254464.3, Feb. 16, 1994, 94-1 CPD ¶ 230. An agency must evaluate offerors on an equal basis and in a manner such that the total cost to the Government for the required services can be meaningfully assessed. See Symplicity Corp., B-291902, Apr. 29, 2003, 2003 CPD ¶ 89 (Agency's evaluation was unreasonable where protester included a fixed price for system integration in its proposal and awardee's quote did not include the fixed price for this task creating a situation where there was no basis for a fair comparison of vendors' prices); SOS Interpreting, Ltd., B-293026, et al., Jan. 20, 2004, 2005 CPD ¶ 26 (Proposal prices were not compared on an equal basis where awardee elected not to include escalation rates for two contract line items contrary to the proposal instructions and the protester included escalated rates in its proposal.)

The requirement to host the system at the contractor's facility entails very significant costs for the contractor, including but not limited to space, personnel, power and network resources. Aeon Nexus's Price proposal would have been reduced by many hundreds of thousands of dollars if Aeon Nexus had been allowed to perform the hosting at a Government facility rather than at its own facility and would have been the lowest cost proposal received, based on the pricing information contained in DHS's letter dated April 28, 2006.

**ii. Improper technical evaluation**

A source selection decision based on inconsistent or inaccurate information concerning the technical evaluation is not reasonably based and must be overturned. Adelaide Blomfield Management Company, B-253128, B-253128.2, Sept. 27, 1993, 93-2 CPD ¶ 197; Ashland Sales

and Service Company, B-291206, Dec. 5, 2002, 2003 CPD ¶ 36 (Protest sustained where SSA relied on erroneous information about evaluated differences between two offerors in making his source selection); J.A. Jones Management Services, Inc., B-276864, July 24, 1997, 97-2 CPD ¶ 47 (Agency had inadequate basis for the award of a contract where the award decision was based on inaccurate and inadequately documented evaluation team report).

Here it appears the technical evaluation did not properly consider the fact that:

- All the functionality required by the SOW does not currently exist in CSSI's "PRISM" product or in the "Optional PRISM Web Modules" contained on CSSI's GSA Schedule contract and the evaluation did not properly account for the additional technical and performance risk and potential difficulties relating to CSSI having to create functionality from "scratch."

- The PRISM system being offered by CSSI does not interface with SAP iPro. Also, CSSI requires its customers to install PRISM 5.0 as a prerequisite for interfacing with the procurement software that will be developed under the e-Acquisition Management Portal task order. (This either imposes additional costs on DHS to migrate to PRISM 5.0[6] or creates additional technical and performance difficulties related to creating the interface.)

Since both the price evaluation and the technical evaluation were conducted in an irrational manner and failed to account for the true costs to be incurred by the Agency, Plaintiff is likely to succeed on the merits of this action.

## C. **Aeon Nexus Will Be Irreparably Harmed If The Limited Injunctive Relief Is Not Provided.**

To assess irreparable injury to the Plaintiff, the inquiry focuses on whether the company

[6] This grounds has cost implications as well. The RFQ required offerors to propose fixed prices that were to include "all costs and fees, including overhead and profit." April 4 RFQ at 5. The RFQ did not permit the contractor to impose costs outside the proposed fixed price on the Government. Therefore, CSSI could not propose a condition that required the Government to acquire and implement software that was not part of CSSI's proposed portal solution, or the Government software environment that the RFQ described. It appears these additional costs were also not considered in the Price evaluation.

has an adequate remedy in the absence of an injunction. Transatlantic Lines LLC v. United States, 68 Fed. Cl. 48, 56-57 (2005) citing Overstreet Elec. Co. v. United States, 47 Fed. Cl. 728, 743-44 (2000). As the following discussion demonstrates, Aeon Nexus has no other remedy and would suffer significant irreparable harm in the absence of the injunctive relief sought.

First, Aeon Nexus will have been denied the opportunity to compete in a fair and competitive bidding process. CW Gov 't Travel, Inc. v. United States, 61 Fed. Cl. 559, 575 (2004); Overstreet Elec. Co., 47 Fed. Cl. at 744. DHS's waiver of requirements for CSSI, purchase of non-Schedule goods and services and irrational and unlawful evaluation rendered the award decision unlawful and unreasonable and prevented Aeon Nexus from competing with CSSI on an equal basis. This fundamental inequity can be remedied only by the Court granting the limited injunctive relief sought. See Red River Servo Corp. V. United States, 60 Fed. Cl. 532, 549 (2004) (granting injunction and finding irreparable harm based on agency's violation of FAR regulations during procurement process).

Absent granting of the requested injunctive relief, Aeon Nexus will suffer the loss of the opportunity to perform the contract DHS awarded to CSSI and the associated loss of revenue and profit. Many courts have found that plaintiffs would be irreparably injured in the face of much more speculative harms. See Aerolease Long Beach & Satsuma Investment, Inc. v. United States, 31 Fed. Cl. 342 (1994); National Maritime Union of America v. Commander, MSC, 824 F.2d 1228 (D.C. Cir. 1987); O'Donnell Construction Co. v. District of Columbia, 963 F.2d 420 (D.C. Cir. 1992); Varicon International, *et al.* v. Office of Personnel Management, 934 F. Supp. 440 (D.D.C. 1996) (plaintiff would be irreparably injured by the loss of its opportunity to participate in a procurement process free from taint). The loss of Aeon Nexus's ability to receive the benefits of its participation in a competitive procurement is an irreparable injury.

**D. The Balance Of Hardships Is In Aeon Nexus's Favor.**

In the present case, Aeon Nexus is seeking only limited injunctive relief. Aeon Nexus is not seeking to enjoin DHS from completing the preliminary work, currently in progress, which is encompassed by Task 1 and includes the following:

- Kickoff meeting (3 days after award);
- Requirements Analysis;
- System Requirements Specification (30 days);
- WBS/Milestone schedule (30 days);
- Implementation Plan (30 days);
- Project status meetings

April 6 RFQ at C.5

Aeon Nexus is seeking a limited injunction which would prevent DHS from going forward with deployment of the system and related tasks (Tasks 2-6) until such time as this Court has the opportunity to rule on the propriety of the Agency's action in awarding the TO to CSSI. Initial deployment was scheduled, in the RFQ, to be completed by July 1, 2006. Id. Full capability deployment was not scheduled to be completed until August 1, 2006. Id. Furthermore, it is Aeon Nexus's understanding the awardee CSSI is currently behind schedule and deployment (Tasks 2-6) has not yet begun.

Aeon Nexus has moved to expedite this case so that it can be decided in the shortest amount of time possible. Allowing CSSI to continue with the requirements analysis and other tasks under Task 1, will allow the contract to proceed without reaching a point where the Court's ability to provide a remedy, should it determine the Government violated applicable law, will not be impaired.

The limited injunction requested by Aeon Nexus will work only minimal harm on DHS. Because the activities Aeon Nexus is seeking to enjoin are not scheduled to occur until July 1,

2006 and August 1, 2006 respectively, the delay created by this limited injunction will be minimized. See Transatlantic Lines, 68 Fed. Cl. at 57 (granting injunction in post-award protest and rejecting Government argument of hardship from impact of delay) citing Overstreet, 47 Fed. Cl. at 744 ("only in an exceptional case would [such delay] alone warrant a denial of injunctive relief, or the courts would never grant relief in bid protests." (citation omitted)). To the extent there is some modest delay as a result of the limited injunction being requested, such inconvenience does not outweigh the harm to Aeon Nexus if the injunction is not granted. See CWGov't Travel, 61 Fed. Cl. at 575-76. If the limited injunctive relief requested is not granted, it is possible the e-Acquisition Management Portal could reach a stage of deployment where it would become exceedingly difficult for the Court to grant relief to Aeon Nexus regardless of the illegality of the Agency's actions. Such a result would obviously work a huge hardship on Aeon Nexus, a small disadvantaged business, because it will have been illegally deprived of this important contracting opportunity.

With respect to CSSI, there is little possible harm that would result in the grant of limited injunctive relief requested. As discussed above, any delay resulting from the injunction would be minimal and, under the FAR, CSSI likely would be entitled to compensation for any increased costs resulting from the delay, if any. Furthermore, the Court, of course, will award the permanent equitable relief requested only if Aeon Nexus succeeds on the merits of its protest. That judgment would mean that the original award to CSSI was improper and unlawful. Because CSSI has no right to an improperly and unlawfully awarded TO, CSSI can suffer no harm from either the termination of the TO or the Court's declaration that CSSI's proposal was ineligible for award. Further, DHS's termination for convenience of CSSI's TO, should that ultimately occur, will cause it no harm because the company would be entitled to be

paid for all work completed and recover any termination costs incurred.

## E. The Public Interest Favors The Injunction.

Injunctive relief in this matter would serve the public interest. "[I]t is well-established that the public interest is well-served by ensuring that the government procurement process is fair." Asia Pacific Airlines, v. United States 68 Fed. Cl. 8, 27 (2005) citing Doty v. United States, 55 F.3d 1244, 1251 (Fed. Cir. 1995); PGBA, LLC, v. United States 60 Fed. Cl. 196, 221 (2004). Here, failure to grant the limited injunctive relief could mean that an egregious affront to the procurement process may go unremedied. It is beyond a doubt that the public's interest lies in its ability to have faith in the procurement process and for offerors to receive an effective remedy when the Government violates those rules. As the Court of Federal Claims stated in Logicon, Inc. v. United States, 22 Cl. Ct. 776 (1991), the concept of a level playing field is at the heart of the federal procurement system. Here, the Government's waiver of requirements for CSSI and faulty evaluation eliminated that level playing field. It is in the public's interest that this Court not allow this procurement to proceed to a point where effective relief becomes impossible to provide.

Finally, it is in the public interest that taxpayer dollars are spent wisely. The requirement to host the system at the contractor's facility entails very significant costs for the contractor, including but not limited to space, personnel, power and network resources. Aeon Nexus's Price proposal would have been reduced by many hundreds of thousands of dollars if Aeon Nexus had been allowed to perform the hosting at a Government facility rather than at its own facility and would have been the lowest cost proposal received, based on the pricing information contained in DHS's letter dated April 28, 2006. Thus, because of the procurement errors committed by

DHS, the Government is purchasing a technically inferior product at a higher price than the price at which the superior product could have been purchased, had DHS followed applicable procurement regulations.

## IV. Conclusion

In sum, Aeon Nexus has demonstrated a high probability of success on the merits of its challenge, that it will suffer irreparable harm if limited injunctive relief is not provided, that the balance of harms favors Aeon Nexus, and that granting the limited injunctive relief will serve the public interest. Accordingly, the Court should grant the equitable relief sought.

For the foregoing reasons, Aeon Nexus requests that its motion for limited injunctive relief be granted.

Respectfully submitted,

Date: June 6, 2006

By: [signature]

David S. Cohen, Esq.

Cohen Mohr, LLP
1055 Thomas Jefferson St., NW
Suite 504
Washington, DC 20007
(202) 342-2550 (telephone)
(202) 342-6147 (facsimile)

Attorney of Record for Plaintiff Aeon Nexus Corporation.

Of Counsel:

John J. O'Brien
Cohen Mohr, LLP
1055 Thomas Jefferson St., NW
Suite 504
Washington, DC 20007
(202) 342-2550 (telephone)
(202) 342-6147 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 6 day of June 2006, a copy of the foregoing was served by hand delivery on:

Counsel for the United States:

Mark Melnick
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20530

David S. Cohen

FILED
JUN - 6 2006
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | |
|---|---|
| Aeon Nexus Corporation<br>Plaintiff,<br>v.<br>THE UNITED STATES<br>Defendant. | CFC No. 06-444C |

# ORDER

This matter comes before the Court on Plaintiff's Motion for Limited Preliminary Injunctive Relief. It is hereby:

ORDERED that Plaintiff's Motion for Limited Preliminary Injunctive Relief is hereby granted, and it is:

FURTHER ORDERED that the United States Department of Homeland Security is preliminarily enjoined from deploying Compusearch Software Systems, Inc.'s e-Acquisition Management Portal solution and may not commence or continue with Tasks 2-6 under Request for Quotations No. HSHQDC-06-Q-00079 until such time as issues raised in this protest are resolved.

Date: ___________________

By: ___________________________________
Judge, United States Court of Federal Claims